| | |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | EASTERN DISTRICT OF CALIFORNIA |

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MIKE DIAL, et al.,<br><br>　　　　　Defendants. | No. 2:19-cv-00801-KJM-EFB<br><br>ORDER |

On May 6, 2019, New York Life Insurance Company filed a complaint in interpleader to determine the rightful beneficiary of the life insurance policy proceeds of Eugene Lawlor, who passed away May 17, 2018. Compl., ECF No. 1. Lawlor, a former priest based in Sacramento, California, initially designated defendant Mike Dial, a parishioner, as his sole beneficiary. Compl., Ex. A at 8; Mot., ECF No. 10-1, at 3. Later, however, Lawlor appeared to express a desire to change the beneficiary to St. Mary's Cemetery in Sacramento or to Eddy G. Buvert, an officer of St. Mary's Cemetery. Mot. at 3. New York Life Insurance served St. Mary's Cemetery and Eddy G. Buvert in this action. *Id.*, Exs. B, C. After unsuccessful attempts to locate Dial, New York Life Insurance now requests an order permitting service of the summons and complaint by publication as to defendant Dial. Neither of the remaining defendants

oppose. *See* Statement of Non-Opp'n, ECF No. 13. On November 6, 2019, the court heard oral argument and ordered the parties to file supplemental briefing regarding the appropriate vehicle for publication, and further ordered attorney Michele Rannie, who conducted the search for Dial, to file a supplemental declaration. ECF No. 20. New York Life and Rannie filed the requested briefing and declaration, respectively. ECF Nos. 21, 22.

As explained below, the court GRANTS plaintiff's motion.

I. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 4(e), an individual may be served by:

(1) following state law for serving a summons . . . ; or

(2) doing any of the following:

   (A) delivering a copy of the summons and of the complaint to the individual personally;

   (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

   (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Under Rule 4(e)(1), the court looks to California law to determine the permissibility of service by publication. *See Thieme v. Cobb*, No. C 13-3827 MEJ, 2013 WL 5955749, at *2 (N.D. Cal. Oct. 30, 2013). In California, service by publication is permitted as a matter of last resort. Cal. Civ. Proc. Code § 415.50. Specifically, the California Code of Civil Procedure provides:

(a) A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified . . . .

Cal. Civ. Proc. Code § 415.50(a). Section 415.50(a) also requires that either:

(1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action [or]

/////

/////

/////

2

> (2) The party to be served has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action consists wholly or in part in excluding the party from any interest in the property.

Cal. Civ. Proc. Code § 415.50(a)(1)–(2).

Service by publication should "be utilized only as a last resort," *Watts v. Crawford*, 10 Cal. 4th 743, 749 n.5 (1995), because "notice by publication [is] not reasonably calculated to provide actual notice of the pending proceeding and [is] therefore inadequate to inform those who could be notified by more effective means such as personal service or mailed notice[,]" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983). Hence, "[b]efore allowing a plaintiff to resort to service by publication, the courts necessarily require [a plaintiff] to show exhaustive attempts to locate the defendant . . . ." *Watts*, 10 Cal. 4th at 749 n.5 (internal quotation marks and citation omitted). A plaintiff has the burden to establish "reasonable diligence" in attempting service by other methods. *Olvera v. Olvera*, 232 Cal. App. 3d 32, 42 (1991).

"Reasonable diligence" means:

> [A] thorough, systematic investigation and inquiry conducted in good faith . . . . A number of honest attempts to learn defendant's whereabouts or address by inquiry of relatives, friends, and acquaintances, or of an employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location, are generally sufficient. These are likely sources of information, and consequently must be searched before resorting to service by publication. However, the showing of diligence in a given case must rest on its own facts and no single formula nor mode of search can be said to constitute due diligence in every case.

*Kott v. Superior Court*, 45 Cal. App. 4th 1126, 1137–38 (1996) (internal quotations marks and citations omitted).

II. <u>DISCUSSION</u>

Here, New York Life Insurance has attempted service with "reasonable diligence," and therefore satisfies the requirements of California Code of Civil Procedure section 415.50(a).

/////

3

New York Life Insurance filed this case in interpleader to determine the rightful recipient of Lawlor's life insurance proceeds. *See* Compl. ¶ 23. Based on the complaint, it appears Dial has a potentially viable claim against Lawlor's life insurance policy. *See id.* ¶ 8; *id.*, Ex. A (Member Enrollment Form for Eugene Lawlor listing Mike Dial as beneficiary); *id.*, Ex. B (New York Life Insurance Company certificate and schedule of benefits including Mike Dial as beneficiary). Therefore, California Code of Civil Procedure section 415.50(a) is satisfied, because Mike Dial is a "necessary or proper party to the action." Cal. Civ. Proc. Code § 415.50(a)(2); *see also Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010) (holding "purpose of interpleader is for the stakeholder to 'protect itself against the problems posed by multiple claims to a single fund.'" (citation omitted)).

Furthermore, New York Life Insurance submits affidavits explaining its extensive search efforts for Dial. *See* Rannie Decl., ECF No. 10-3; Suppl. Rannie Decl., ECF No. 21. Michele Rannie, an attorney representing New York Life, avers she conducted searches for "Mike Dial" and "Michael Dial" using the WestLaw "People Map," a public records search tool that searches birth records, as well as death, marriage, real property, criminal, bankruptcy and other records. Rannie Decl. ¶ 10. Rannie states she attempted to contact the individuals produced in the search by either leaving a voicemail or speaking to a person who answered the phone. *Id.* None of these persons appeared to know Lawlor or claimed to be a parishioner of his church. *Id.* Rannie also attempted to contact Lawlor's next of kin but found that the brother she identified is deceased. *Id.* ¶ 13. She also contacted two of Lawlor's previous parishes and was advised that no Mike Dial was listed as a parishioner at either location. *Id.* ¶ 14.

Additionally, counsel for New York Life Insurance also ran searches of online social media, but the searches yielded too many results to locate the Mike Dial at issue here. *Id.* ¶ 15. Counsel also spoke with defendant Eddy Buvert and employees of the Diocese to determine if they knew Dial's whereabouts, but they did not. *Id.* ¶ 16. In addition, counsel hired a private detective to run a "skip trace" on the name Mike Dial, but the search was unsuccessful because there were "numerous individuals with that name." *Id.* ¶ 17; *id.* Ex. C, ECF No. 10-3, at 20.

/////

|   |   |
|---|---|
| 1 | Finally, because Lawlor had previously indicated Mike Dial was "in prison," Mot., |
| 2 | Ex. A (Call Tr.), ECF No. 10-3, at 9, Rannie searched for an inmate named Mike Dial or Michael |
| 3 | Dial using the Federal Bureau of Prisons website, the California Department of Corrections and |
| 4 | Rehabilitation website, and the California County Jails website, but was unable to find any inmate |
| 5 | by that name. Suppl. Rannie Decl. ¶¶ 4–7. |
| 6 | On this record, the court finds New York Life Insurance's attempts to locate Mike |
| 7 | Dial satisfy the "reasonable diligence" requirement. *See Donel, Inc. v. Badalian*, 87 Cal. App. 3d |
| 8 | 327, 333 (1978) ("In each case where the question here presented is under review the particular |
| 9 | facts will control. No single formula nor mode of search can be said to constitute due diligence in |
| 10 | every case."); *id.* at 333–34 (single act of searching telephone directories insufficient to show |
| 11 | "reasonable diligence"); *Kott*, 45 Cal. App. 4th at 1137–38 ("A number of honest attempts to |
| 12 | learn defendant's whereabouts or address by inquiry of relatives, friends, and acquaintances, or of |
| 13 | an employer, and by investigation of appropriate city and telephone directories, the voters' |
| 14 | register, and the real and personal property index in the assessor's office, near the defendant's last |
| 15 | known location, are generally sufficient."). |
| 16 | Originally, New York Life Insurance contended that publication in *The* |
| 17 | *Sacramento Gazette* newspaper was most likely to give Mike Dial notice of this action; however, |
| 18 | as noted at hearing, the *Gazette* may not be an appropriate vehicle for publication in this instance. |
| 19 | *See* Mot. at 8–9. At hearing the court asked counsel for New York Life Insurance to suggest an |
| 20 | alternative publication with a broader circulation, and one more likely to reach an inmate in jail or |
| 21 | prison in or near Sacramento. *See* ECF No. 20. Counsel has suggested *The Sacramento Bee* and |
| 22 | represented that the *Bee* is circulated throughout the California State prison system. *See* Suppl. |
| 23 | Stat. ¶ 3, ECF No. 22. Counsel also represents the *Bee* is the largest newspaper in Sacramento, |
| 24 | with a circulation area that spans roughly 12,000 square miles. *Id.* ¶ 1. Given the broad |
| 25 | circulation of the *Bee* and Lawlor's description of Mike Dial as one of his parishioners, |
| 26 | suggesting Dial's last known residence was in Sacramento, *see* Ronnie Decl. ¶ 18, the court finds |
| 27 | *The Sacramento Bee* is an appropriate publication for service of summons for Mike Dial. There |
| 28 | appears no need to identify an additional publication that is more certain to reach current inmates |

in jail or prison given Rannie's declaration stating no Mike or Michael Dial appears in any of the relevant inmate databases.

III. CONCLUSION

New York Life Insurance has demonstrated it has taken reasonable steps to locate and effect service on Mike Dial and has exhausted its efforts to do so. Accordingly, the court GRANTS New York Life Insurance's application for an order permitting service of summons and the complaint by publication.

New York Life Insurance is directed to serve Mike Dial by publication in *The Sacramento Bee*. *See* Cal. Code Civ. Proc. § 415.50(b). It is further directed to mail a copy of the summons, the complaint and the order for publication to Mike Dial if his address is ascertained within the next 60 days. *Id.* Moreover, New York Life Insurance shall comply with California Government Code section 6064, which provides that the publication in the approved publication must occur once a week for four successive weeks. It shall have sixty (60) days from the date of this order in which to effect service by publication and file proof thereof with the court within 75 days of this order.

IT IS SO ORDERED.

DATED: January 15, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE